```
           IN THE UNITED STATES DISTRICT COURT
         FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

                         CHARLESTON
```

> THIS MEMORANDUM OPINION AND ORDER IS VACATED PURSUANT TO THE [753] MEMORANDUM OPINION AND ORDER ENTERED 08/97/2006

```
In RE: SERZONE

   PRODUCTS LIABILITY LITIGATION
                                        MDL NO. 1477
                                        Hon. Joseph R. Goodwin

Appeal of Christopher McDermand (Docket No. 512)
-----------------------------
```

## MEMORANDUM OPINION AND ORDER

By virtue of the Third Amended Settlement Agreement ("Agreement") (Docket Sheet Document # 184), the parties designated the undersigned to review any appeals filed by plaintiffs regarding decisions by the Claims Administrator placing them in certain fund categories pursuant to the Agreement and the Schedule of Payments, which is attached to the Agreement as Exhibit B. The Schedule of Payments describes the objective criteria needed to qualify for recovery under Funds A, B, C and D. Funds A, B and C require a showing of a qualifying medical condition and submission of documents showing that the qualifying medical condition is temporally associated with the use of Serzone®. Funds A, B and C are subcategorized according to specific medical criteria. Fund D is the sole fund category which requires only that the plaintiff "can document that he or she purchased Serzone® or used Serzone®, or alleges that he or she was injured by Serzone® and is not making

a claim for benefits or eligible under Funds A, B or C ...." (# 184, Exhibit B.)

On October 3, 2005, Patrice McDermand, on behalf of her deceased husband, Christopher McDermand ("Plaintiff"), submitted a claim form seeking placement and award within Fund A. On May 23, 2006, the Claims Administrator advised that Plaintiff had been placed in Fund D. On June 26, 2006, Mrs. McDermand, by counsel, appealed the decision of the Claims Administrator. (# 512.) Bristol-Myers Squibb Company ("BMS") has filed under seal, a brief in response to the appeal. (# 727.) The court has carefully considered the submissions of both parties.

Under the Agreement, the undersigned must "review ... all documents submitted to the Claims Administrator (including the completed Claims Form and supporting documentation as well as any documents submitted by BMS) ...." (# 184, p. 14.) Pursuant to the Memorandum Opinion and Order Approving Settlement and Certifying the Settlement Class (# 296) entered by the presiding Multi-District Litigation ("MDL") Judge, Judge Goodwin, the undersigned must set aside the Claims Administrator's award if the factual determination was "clear error." (# 296, p. 49.)

For purposes of the instant appeal, "clear error" has not been defined by the parties or the court. Pursuant to Rule 72(a) of the Federal Rules of Civil Procedure, which governs the review of a magistrate judge's order on a nondispositive matter, a decision

shall not be modified or set aside unless it is "clearly erroneous or contrary to law." In <u>Marks v. Global Mortgage Group, Inc.</u>, 218 F.R.D. 492, 495 (S.D. W. Va. 2003), Judge Goodwin observed that "[a] district court should reverse a magistrate judge's decision in a discovery dispute as 'clearly erroneous' only if the district court is left with a definite and firm conviction that a mistake has been made." (Citing <u>Clark v. Milam</u>, 155 F.R.D. 546, 547 (S.D. W. Va. 1994)). In the criminal realm, "plain error" as used in Rule 52(b) of the Federal Rules of Criminal Procedure is defined as affecting "substantial rights." In <u>United States v. Olano</u>, 507 U.S. 725, 733-34 (1993), the United States Supreme Court explained that there must be an error that is "plain," which affects "substantial rights." For an error to affect substantial rights, it must "have affected the outcome of the district court proceedings." <u>Id.</u> at 734. If these conditions are met, the court may exercise its discretion to notice the error, but only if the error "'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.'" <u>Id.</u> at 736 (quoting <u>United States v. Atkinson</u>, 297 U.S. 157, 160 (1936)).

To recover under Fund A, Plaintiff must submit:

> (1) hospital records from an admission in which treatment for an alleged Serzone® related acute liver failure was provided and in which a hepatologist or board certified gastroenterologist stated that the claimant's or decedent's acute liver failure was temporally associated with the ingestion of Serzone®; or

> (2) a report from a hepatologist or board certified gastroenterologist or, in the case of death, a board certified pathologist, which states that the claimant's or decedent's acute liver failure was temporally associated with the ingestion of Serzone®.
>
> The claimant or representative must also complete the Fund A Serious Hepatic Injury Claim Form and provide all documents required by that Form.
>
> "Acute liver failure," as used in Fund A, requires the following within twelve weeks after last documented use of Serzone®: (1) development of hepatic encephalopathy, or (2) the diagnosis of fulminant liver failure and an elevated prothrombin time with an international normalized ratio (INR) > 1.5.
>
> "Acute Hepatocellular Injury," as used in Fund A, requires evidence of acute hepatocellular damage documented in a pathology report.
>
> Chronic/Alternative Liver Conditions
>
>     (1) If the claimant or decedent, prior to or during Serzone® use, had a Chronic Liver Condition [footnote omitted], use the Fund A – Serious Hepatic Injury Compensation Matrix for Claimants with Chronic Liver Conditions.
>     (2) If the claimant or decedent, during Serzone® use, had an Acute Liver Condition [footnote omitted], use the Fund A – Serious Hepatic Injury Compensation Matrix for Claimants with Chronic Liver Conditions.
>     (3) If the claimant's or decedent's medical records and/or the report required for Fund A qualification state that a cause of the claimant's liver failure was another medication being taken by the claimant, or state that a cause of the claimant's liver failure was something other than Serzone®, use the Fund A – Serious Hepatic Injury Compensation Matrix for Claimants with  Chronic Liver Conditions.

(# 184, Exhibit B.)

The events that qualify Serzone® users for recovery under Fund A "Base Matrix Levels" are as follows:

Level A-I:  Representatives of decedents who died from acute liver failure arising from acute hepatocellular injury or died as a result of complications from a liver transplant necessitated by acute liver failure arising from acute hepatocellular injury may recover under matrix level A-I.  For matrix level A-I, the age at time of qualifying liver event used to determine the appropriate base matrix level is the age on the date of death.

Level A-II*:  Claimants who developed acute liver failure arising from acute hepatocellular injury, who had a liver transplant, and who developed, after liver transplant, from unanticipated infections, immunosuppression problems, episodes of transplant rejection or liver dysfunction, which resulted in significant and chronic impairment, may recover under matrix level A-II.  For matrix level A-II, the age at time of qualifying liver event used to determine the appropriate base matrix level is the age on the date of transplant.  If claimant received more than one transplant, the age at time of qualifying liver event used to determine the appropriate base matrix level is the age on the date of the initial transplant.

Level A-III*:  Claimants who developed acute liver failure arising from acute hepatocellular injury and who had a liver transplant and recovered without unanticipated complications and without significant and chronic impairment may recover under matrix level A-III.  For matrix level A-III, the age at time of qualifying liver event used to determine the appropriate base matrix level is the age on the date of transplant.  If claimant received more than one transplant, the age at time of qualifying liver event used to determine the appropriate base matrix level is the age on the date of the initial transplant.

Level A-IV:  Claimants who developed acute liver failure arising from acute hepatocellular injury that required hospitalization, pre-transplant evaluation and placement of the claimant on the UNOS liver transplant list may recover under matrix level A-IV.  For matrix level A-IV, the age at time of qualifying liver event used to determine the appropriate base matrix level is the age on the date of placement on the UNOS liver transplant list.  If claimant was placed on the UNOS transplant list more than once, the age at time of qualifying liver event used to determine the appropriate base matrix level is the age

> on the date of the initial placement on the UNOS transplant list.
>
> [*Objective criteria distinguishing between Level A-II and Level A-III will be incorporated into the Claims Manual.]

(# 184, Exhibit B.)

> To recover under Fund B, Plaintiff must submit:
>
> (1) hospital records from an admission in which treatment for an alleged Serzone®-related liver injury was provided or, if the claimant was not hospitalized, medical records from contemporaneous treatment in which a hepatologist, board certified gastroenterologist or board certified internist stated that the claimant's qualifying liver event was temporally associated with the ingestion of Serzone®; or
> (2) a report from a hepatologist, board certified gastroenterologist or board certified internist, which states that the claimant's qualifying liver event was temporally associated with the ingestion of Serzone®.
>
> The claimant must also complete the Fund B General Hepatic Injury Claim Form and provide all documents required by that Form.
>
> "Temporal Association," as used in Fund B, requires the qualifying liver injury to occur within two (2) weeks after last documented use of Serzone®.
>
> "Acute Hepatocellular Injury," as used in Fund B, requires evidence of acute hepatocellular damage documented in a pathology report.

(# 184, Exhibit B.)

The events that qualify Serzone® users for recovery under Fund B "Matrix Levels" are as follows:

> Level B-I: Claimants who developed an acute liver injury, the management or treatment of which required hospitalization, and who developed significant simultaneous elevations of liver enzymes and total bilirubin levels (as defined below) established by two (2) consecutive blood tests separated by at least two (2)

days but less than ninety (90) days [footnote omitted] may recover under matrix level B-I. For matrix level B-I, the age at time of qualifying liver event used to determine the appropriate base matrix level is the age on the initial date of hospitalization for the acute liver injury.

For claimants with normal baseline liver enzyme test results [footnote omitted] seeking recovery under matrix level B-I, simultaneous elevations of liver enzymes and total bilirubin levels means that either the claimant had AST and/or ALT levels greater than or equal to fifteen (15) times the upper limit of normal simultaneous with total bilirubin levels greater than or equal to two milligrams per deciliter (2.0 mg/dl), documented by two (2) consecutive blood tests, each establishing the requisite simultaneous elevations of AST and/or ALT and total bilirubin levels, separated by at least two (2) days but less than ninety (90) days [footnote omitted], or one (1) blood test establishing the requisite simultaneous elevations of AST and/or ALT and total bilirubin levels and a contemporaneous abnormal liver biopsy demonstrating evidence of Acute Hepatocellular Injury.

For all remaining claimants seeking recovery under matrix level B-I (those with abnormal baseline liver enzyme results), simultaneous elevations of liver enzymes and total bilirubin levels means that either the claimant had AST or/and ALT levels greater than or equal to fifteen (15) times the claimant's average elevated enzyme level prior to his/her initial use of Serzone® simultaneous with total bilirubin levels greater than or equal to two (2) times the claimant's average elevated total bilirubin levels prior to his/her initial use of Serzone® or two milligrams per deciliter (2.0 mg/dl), whichever is greater, documented by two (2) consecutive blood tests, each establishing the requisite simultaneous elevations of AST and/or ALT and total bilirubin levels, separated by at least two (2) days but less than ninety (90) days [footnote omitted], or one (1) blood test establishing the requisite simultaneous elevations of AST and/or ALT and total bilirubin levels and a contemporaneous abnormal liver biopsy demonstrating evidence of Acute Hepatocellular Injury.

\*\*\*

7

Level B-II: Claimants who developed an acute liver injury, the management or treatment of which required hospitalization or at least three (3) independent instances of outpatient care, and who developed significant elevations of liver enzymes or total bilirubin levels (as defined below) established by two (2) consecutive blood tests separated by at least two (2) days but less than ninety (90) days [footnote omitted] may recover under matrix level B-II. For matrix level B-II, the age at time of qualifying liver event used to determine the appropriate base matrix level is the age on the initial date of hospitalization or initial office visit for treatment of the acute liver injury.

For claimants with normal baseline liver enzyme test results [footnote omitted] seeking to recover under matrix level B-II, significant elevations of liver enzymes or total bilirubin levels means that the claimant had AST and/or ALT levels greater than or equal to ten (10) times the upper limit of normal or total bilirubin levels greater than or equal to three milligrams per deciliter (3.0 mg/dl), documented by two (2) consecutive blood tests, each establishing the requisite elevations of AST and/or ALT and/or total bilirubin, separated by at least two (2) days but less than ninety (90) days [footnote omitted].

For all remaining claimants seeking to recover under matrix level B-II (those with abnormal baseline liver enzyme results), significant elevations of liver enzymes or total bilirubin levels means that the claimant had AST and/or ALT levels greater than or equal to ten (10) times the claimant's average elevated enzyme level prior to his/her initial use of Serzone® or total bilirubin levels greater than or equal to three (3) times the claimant's average elevated total bilirubin levels prior to his/her use of Serzone® or three milligrams per deciliter (3.0 mg/dl), whichever is greater, documented by two (2) consecutive blood tests, each establishing the requisite elevations of AST and/or ALT and/or total bilirubin levels, separated by at least two (2) days but less than ninety (90) days [footnote omitted].

*** 

Level B-III: Claimants who developed, and have a contemporaneous diagnosis of, one or more of the qualifying conditions listed below, the management or

treatment of which required hospitalization or at least three (3) independent instances of outpatient care for the treatment of the underlying qualifying condition may recover under matrix level B-III.  For matrix level B-III, the age at time of qualifying liver event used to determine the appropriate base matrix level is the age on the initial date of hospitalization or initial outpatient visit for the qualifying liver condition.

» Jaundice: Claimants clinically diagnosed with jaundice Temporally Associated with the use of Serzone® and that had total bilirubin levels greater than two milligrams per deciliter (>2.0 mg/d) excluding those claimants who, prior to or during Serzone® use had a Chronic Liver Condition [footnote omitted], an Acute Liver Condition [footnote omitted], Gilbert's syndrome, Rotor's syndrome or Dubin-Johnson syndrome.

» Elevations of Liver Enzymes and Total Bilirubin: Claimants diagnosed with elevated liver enzymes and total bilirubin levels in temporal association with their use of Serzone®.

For claimants with normal baseline liver enzyme test results [footnote omitted] seeking recovery under matrix level B-III, simultaneous elevations of liver enzymes and total bilirubin levels means that either the claimant had AST and/or ALT levels greater than or equal to five (5) times the upper limit of normal simultaneous with total bilirubin levels greater than or equal to one and one-half milligrams per deciliter (1.5 mg/dl), documented by two (2) consecutive blood tests, each establishing the requisite simultaneous elevations of AST and/or ALT and total bilirubin levels, separated by at least two (2) days but less than ninety (90) days [footnote omitted], or one (1) blood test establishing the requisite simultaneous elevations of AST and/or ALT and total bilirubin and a contemporaneous abnormal liver biopsy demonstrating evidence of Acute Hepatocellular Injury.

For all remaining claimants seeking recovery under matrix level B-III (those with abnormal baseline liver enzyme results), simultaneous elevations of liver enzymes and total bilirubin levels means that either the claimant had AST or/and ALT levels greater than or equal to five (5) times the claimant's average elevated enzyme level prior to his/her initial use of Serzone® simultaneous with total bilirubin levels greater than or equal to one and

one-half milligrams per deciliter (1.5 mg/dl) or fifty (50) percent greater than the claimant's average elevated total bilirubin levels prior to his/her initial use of Serzone®, whichever is greater, documented by two (2) consecutive blood tests, each establishing the requisite simultaneous elevations of AST and/or ALT and total bilirubin levels, separated by at least two (2) days but less than ninety (90) days [footnote omitted], or one (1) blood test establishing the requisite simultaneous elevations of AST and/or ALT and total bilirubin levels and a contemporaneous abnormal liver biopsy demonstrating evidence of Acute Hepatocellular Injury.

***

Level B-IV: Claimants who developed slight simultaneous elevations of liver enzymes and total bilirubin levels (as defined below) established by two (2) consecutive blood tests separated by at least two (2) days but less than ninety (90) days [footnote omitted] may recover under matrix level B-IV. For matrix level B-IV, the age at time of qualifying liver event used to determine the appropriate base matrix level is the age on the date of the initial blood test revealing elevations in liver enzymes and total bilirubin.

For claimants with normal baseline liver enzyme test results [footnote omitted] seeking recovery under matrix level B-IV, slight simultaneous elevations of liver enzymes and total bilirubin levels means that either the claimant had AST and/or ALT levels greater than or equal to two (2) times the upper limit of normal simultaneous with abnormal and elevated total bilirubin test levels, documented by two (2) consecutive blood tests, each establishing the requisite simultaneous elevations of AST and/or ALT and total bilirubin levels, separated by at least two (2) days but less than ninety (90) days [footnote omitted], or one (1) blood test establishing the requisite simultaneous elevations of AST and/or ALT and total bilirubin levels and a contemporaneous abnormal liver biopsy demonstrating evidence of Acute Hepatocellular Injury.

For all other claimants seeking recovery under matrix level B-IV (those with abnormal baseline liver enzyme results), slight simultaneous elevations of liver enzymes means that either the claimant had AST and/or ALT levels greater than or equal to two (2) times the

> claimant's average enzyme level prior to his/her initial use of Serzone® simultaneous with abnormal and elevated total bilirubin levels, compared to his/her levels prior to initial Serzone® use, documented by two (2) consecutive blood tests, each establishing the requisite simultaneous elevations of AST and/or ALT and total bilirubin levels, separated by at least two (2) days but less than ninety (90) days [footnote omitted], or one (1) blood test establishing the requisite simultaneous elevations of AST and/or ALT and total bilirubin levels and a contemporaneous abnormal liver biopsy demonstrating evidence of Acute Hepatocellular Injury.

(# 184, Exhibit B.)

> To recover under Fund C, Plaintiff must submit:
>
> (1) hospital records from an admission in which treatment for an alleged Serzone® related liver injury was provided or, if claimant was not hospitalized, medical records from contemporaneous treatment in which a licensed medical physician stated that the claimant's qualifying liver injury was temporally associated with the ingestion of Serzone®; or
> (2) a report from a hepatologist, board certified gastroenterologist or board certified internist, which states that the claimant's qualifying liver injury was temporally associated with the ingestion of Serzone®.
>
> The claimant must also complete the Fund C Non-Serious Hepatic Injury Claim Form and provide all documents required by that Form.
>
> To qualify under Fund C, the claimant must provide documented evidence of elevated liver enzymes or total bilirubin levels in Temporal Association with the use of Serzone®.
>
> "Temporal Association," as used in Fund C, requires the qualifying liver injury to occur within two (2) weeks after last documented use of Serzone®.

(# 184, Exhibit B.)  To recover under Level C-I, claimants with normal baseline liver enzyme test results must show "AST or ALT levels greater than or equal to three (3) times the upper limit of

normal" or "total bilirubin levels greater than or equal to two milligrams per deciliter (2.0 mg/dl)."  (# 184, Exhibit B.)  Claimants with abnormal baseline liver enzyme test results must show "AST or ALT levels greater than or equal to three (3) times the claimant's average liver enzyme levels prior to his/her initial use of Serzone®" or "total bilirubin levels greater than or equal [to] two (2) times the claimant's average total bilirubin level prior to his/her initial use of Serzone® or two milligrams per deciliter (2.0 mg/dl), whichever is greater."  (# 184, Exhibit B.)

To recover under Level C-II, claimants with normal baseline liver enzyme test results must show "AST or ALT or total bilirubin levels fifty percent (50%) greater than the claimant's average liver enzyme or total bilirubin levels prior to his/her initial use of Serzone®."  (# 184, Exhibit B.)  For those with abnormal baseline liver enzyme test results, claimants must show "AST or ALT or total bilirubin levels fifty percent (50%) greater than the claimant's average liver enzyme or total bilirubin levels prior to his/her initial use of Serzone®."  (# 184, Exhibit B.)

To recover under Fund D, claimant must "document that he or she purchased Serzone® or used Serzone®, or [allege] that he or she was injured by Serzone® and is not making a claim for benefits or eligible for benefits under Funds A, B or C."  (# 184, Exhibit B.)

In her appeal, Mrs. McDermand does not identify the grounds for appeal.  However, in a letter of record from counsel dated

April 3, 2006, Mrs. McDermand's counsel argues that Plaintiff, who was thirty-eight years old at the time of his death, has a "medical report that states Serzone did contribute to the death." In addition, Plaintiff had normal liver function just nine months prior to taking Serzone®. In a letter dated November 3, 2005, Mrs. McDermand's counsel asserts that Plaintiff was taking Serzone® at the time of his death and had a half-bottle of the drug in his toiletry kit when he was found in the motel room. In addition, Mrs. McDermand's counsel asserts Plaintiff had been taking Serzone® and completed prescriptions of the drug.

In response, BMS argues that Plaintiff fails to qualify under Funds A, B or C. Instead, according to BMS, the Claims Administrator did not commit clear error in placing Plaintiff in Fund D. (# 727.)

The relevant medical evidence of record includes a letter dated September 26, 2005, from Ronald R. Bell, DFTCB, a forensic toxicology consultant. Mr. Bell reviewed the medical evidence of record, pharmacy records and the coroner's report. Mr. Bell noted that

> [i]n October 2001, Mr. McDermand had an abdominal ultrasound which was normal. In December of that same year, a laboratory workup was done indicating normal liver enzymes at that time. Serzone therapy was begun in April 2002 and continued over the course of several months. Mr. McDermand died in February 2003. An autopsy report indicated the presence of liver disease.
>
> Serzone (nefazodone) has been shown to be hepatotoxic and has been associated with several reported cases of liver

>dysfunction or failure. Mr. McDermand was shown to have normal liver function prior to his Serzone therapy. He died unexpectedly with documented liver disease after having been on Serzone therapy for several months. It is my opinion that the use of Serzone contributed to his liver disease and played a role in his death.

The record includes a death certificate. Plaintiff died on February 16, 2003, at the age of thirty-eight in a motel room in South Lake Tahoe, California. Immediate cause of death was acute pancreatitis, with alcoholic liver disease listed as leading to the cause of death.

An autopsy report dated February 18, 2003, lists the causes of death as acute pancreatitis (days) and alcoholic liver disease with extensive fatty change (months). The report described the liver as having a pale yellowish tan coloration consistent with extensive fatty change. There was no evidence of fibrosis or cirrhosis. No tumor masses were present within the liver parenchyma.

A police report dated February 18, 2003, indicates that Plaintiff was in South Lake Tahoe to attend the wedding of a friend when he died. Plaintiff's wife, from whom Plaintiff was separated, reported Plaintiff was being treated for high blood pressure and was a very heavy drinker of alcohol. Plaintiff's wife also reported recent weight gain in Plaintiff. The police report noted that no medications were found in Plaintiff's motel room.

The inventory form alleges that Plaintiff used Serzone® from January 14, 2000, through February 16, 2003. The record includes

14

evidence from Plaintiff's pharmacy that he filled prescriptions for Serzone® on the following dates[1]:

April 15, 2002  
May 2, 2002  
May 29, 2002  
July 26, 2002  
September 21, 2002  

The record includes the following liver enzyme test results:

| Date | AST (normal 7-40 IU/L) | ALT (normal 0-45 IU/L) | Total Bilirubin (normal 0.2-1.5 mg/dl) |
|---|---|---|---|
| 2/02/98 | 22 IU/L | 28 IU/L | 0.6 mg/dl |
| 3/15/99 | 24 IU/L | | 1.1 mg/dl |
| 8/24/00 | 32 IU/L | 26 IU/L | 1.0 mg/dl |
| 12/12/01 | 35 IU/L | 38 IU/L | 0.5 mg/dl |

The court finds that the decision of the Claims Administrator placing Plaintiff in Fund D was not clear error. Regarding Fund A, Plaintiff must show acute liver failure temporally associated with Serzone®. Acute liver failure as used in Fund A, "requires the following within twelve weeks after last documented use of

---

[1] BMS attaches a pharmacy report as Exhibit A. BMS asserts that it shows Plaintiff used Serzone® beginning December 15, 2001. In fact, that date of use refers to the drug Lotrel.

15

Serzone®: (1) development of hepatic encephalopathy, or (2) the diagnosis of fulminant liver failure and an elevated prothrombin time with an international normalized ratio (INR) > 1.5." (# 184, Exhibit B.) For recovery under any base matrix level in Fund A, A-I through A-IV, Plaintiff must show acute liver failure arising from acute hepatocellular injury. Acute hepatocellular injury as used in Fund A, "requires evidence of acute hepatocellular damage documented in a pathology report." (# 184, Exhibit B.)

Plaintiff has offered no liver biopsy or other evidence of acute liver failure arising from acute hepatocellular injury. Instead, Plaintiff died from acute pancreatitis and alcoholic liver disease with extensive fatty change. The report of Mr. Bell that the use of Serzone® contributed to Plaintiff's liver disease and played a role in his death is not convincing evidence that would qualify Plaintiff for placement in Fund A. Notably, Mr. Bell is not a physician. Nor does he opine that Plaintiff experienced acute liver failure in temporal association with his use of Serzone®. In short, the evidence of record does not establish a Serzone®-related acute liver failure and, as a result, Plaintiff does not qualify for placement in Fund A.

In addition, assuming Plaintiff's allegations of use of Serzone® beginning January 14, 2000, and continuing through February 16, 2003, are true, an assertion not confirmed in the medical evidence of record, the only relevant liver function tests

16

dated August 24, 2000, and December 12, 2001, are normal. The beginning date of Serzone® usage is in question; the court accepts the evidence that Plaintiff had a current Serzone® prescription and a quantity of Serzone® tablets at the time of his death. In addition, the evidence of record does not indicate jaundice. As a result, Plaintiff does not qualify for recovery under Funds B or C.

However, Plaintiff has shown that he purchased Serzone® and, as a result, the determination of the Claims Administrator that he qualifies for recovery under Fund D was not clear error.

Accordingly, it is hereby **ORDERED** that Plaintiff's appeal is **DENIED** because the decision of the Claims Administrator placing Plaintiff in Fund D was not clear error.

The Clerk is directed to transmit a copy of this Memorandum Opinion and Order to counsel for Mrs. McDermand, liaison counsel for plaintiffs and Bristol-Myers Squibb Company and the Claims Administrator.

ENTER: August 7, 2006

Mary E. Stanley
United States Magistrate Judge